PETER SUAU, Respondent, *v.* GEORGE CAFFE and ADELE MARIE CAFFE, Appellants.

The common-law disability of a married woman to engage in a business as a copartner or jointly with her husband was removed by the provision of the act "concerning the liability of husband and wife" (Chap. 90, Laws of 1860), which authorizes a married woman to "carry on any trade or business * * * on her sole and separate account."

When, therefore, a husband and wife assume to carry on a business as copartners, and contract debts in the course of it, the wife cannot escape

liability on the ground of coverture. (HAIGHT, POTTER and BRADLEY, JJ., dissenting.)

*Chambovet* v. *Cagney* (3 J. & S. 474), so far as it holds that husband and wife cannot be copartners, overruled.

(Submitted April 25, 1890; decided October 14, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 31, 1886, which affirmed a judgment in favor of plaintiff entered upon a verdict.

On the 29th of January, 1881, the defendants, then and now husband and wife, executed, and June 1, 1881, recorded in the office of the clerk of the city and county of New York a certificate by which they assumed to form a limited partnership pursuant to the Revised Statutes for the purpose of importing and dealing in foreign goods at the city of New York under the firm name of " George Caffe," which was to continue from February 1, 1881, to February 1, 1886. The husband was the general and the wife the special partner, she contributing $25,000. Thereafter they carried on a business of the kind specified at the city of New York, under the firm name selected, until after the debt to the plaintiff was contracted. Between May 23, 1882, and December 6, 1883, the plaintiff loaned money to " George Caffe," on account of which the defendants conceded that there was due the plaintiff January 1, 1884, $26,799.93, to recover which this action was brought. The defendants interposed two defenses: (1) That the partnership or business relation, whatever it was, which had existed between them before May 16, 1882, was on that day dissolved with the knowledge of the plaintiff; (2) that a husband and wife cannot, under the law of this state, be partners in business; and that although they agree to become so, transact business and incur liabilities as such, the wife is not liable to the creditors of the firm.

The first question, an issue of fact, was contested before a jury and determined in favor of the plaintiff.

The second question, an issue of law, was decided in favor

of the plaintiff at the Circuit, which ruling was affirmed at the General Term. From this judgment the defendants appealed to this court.

*William Tharp* for appellants. The defendant Adele M. Caffe being a married woman, could not bind herself by contract unless (1) the obligation was created by her in or about carrying on her trade or business, or (2) the contract relates to or is made for the benefit of her separate estate, or (3) intention to charge the separate estate is expressed in the instrument by which the liability is created, or (4) the debt was created for property purchased by her. (*S. C. Bank* v. *Pruyn*, 90 N. Y. 250.) There can be no valid business partnership in this state between husband and wife. (*Chambovet* v. *Cagney*, 3 J. & S. 474; Laws of 1884, chap. 381; *Noel* v. *Kinney*, 15 Abb. [N. C.] 403; *Jacquin* v. *Jacquin*, Id. 400; *Fairlee* v. *Bloomingdale*, 67 How. Pr. 292.) At common law, a business copartnership between husband and wife was impossible. They were regarded as one person, and no contract could be made between them. (2 Kent's Comm. 37, 129; *Bertles* v. *Nunan*, 92 N. Y. 160; *Johnson* v. *Rogers*, 35 Hun, 269, 270; Potter's Dwarris on Stat. 185; *Noel* v. *Kinney*, 15 Abb. [N. C.] 407; *Bogert* v. *Gulick*, 65 Barb. 322; *Coleman* v. *Burr*, 93 N. Y. 25; *Savage* v. *O'Neil*, 42 Barb. 364; *White* v. *Wagner*, 25 N. Y. 328; *Aultman* v. *Obermeyer*, 6 Neb. 260; *Hooker* v. *Boggo*, 63 Ill. 161; *Plumer* v. *Lord*, 5 Allen, 402; Laws of 1884, chap. 381; *Coles* v. *Coles*, 15 Johns. 159; *Lawrence* v. *Taylor*, 5 Hill, 107; *S. C. Bank* v. *Pruyn*, 90 N. Y. 250; *Nash* v. *Mitchell*, 71 id. 199; *Cashman* v. *Henry*, 75 id. 114; *Lord* v. *Parker*, 3 Allen, 127; *Lord* v. *Davison*, 3 id. 131; *Edwards* v. *Stevens*, Id. 315; *Haas* v. *Shaw*, 91 Ind. 384; *Scarlett* v. *Snodgrass*, 92 id. 252.) If the partnership sought to be established was one to which the defendant Adele M. Caffe had no legal capacity to belong, or if she could not form a partnership with her husband, then any representations that may have been made by her to the plaintiff do not estop her from setting up

coverture. (*Plumer* v. *Lord*, 5 Allen, 460 ; *Brewster* v. *Striker*, 2 N. Y. 19 ; *Bodine* v. *Killeen*, 53 id. 96 ; *Baker* v. *U. M. L. Ins. Co.*, 43 id. 283 ; *Hutchins* v. *Hubbard*, 34 id. 24 ; *Baker* v. *Lamb*, 11 Hun, 519.) Although the money may have been advanced by the plaintiff, relying in part on the credit of the wife (Adele M. Caffe), yet the wife is not liable. (*M. B. & M. Co.* v. *Thompson*, 58 N. Y. 80 ; *Baker* v. *Lamb*, 14 Hun, 519 ; *S. N. Bk.* v. *Miller*, 63 N. Y. 639 ; *S. C. Bk.* v. *Pruyn*, 90 id. 250 ; *White* v. *McNett*, 33 id. 371 ; *Yale* v. *Dederer*, 68 id. 329 ; *Bertles* v. *Nunan*, 92 id. 160 ; *Cashman* v. *Henry*, 75 id. 103 ; *Frecking* v. *Rolland*, 53 id. 422 ; *Tremeyer* v. *Turnguist*, 85 id. 516 ; Laws of 1860, chap. 96, §§ 1, 7 ; *Nase* v. *Mitchell*, 71 N. Y. 199 ; *Mc Vey* v. *Cantrell*, 70 id. 295.) The exception of defendants to the admission of the certificate of partnership in evidence upon the ground that at the time of making and filing it there could not be any valid partnership between the defendants, they being husband and wife, was well taken. (*Nash* v. *Mitchell*, 71 N. Y. 199, 204 ; *Zimmermann* v. *Erhard*, 83 id. 74 ; *Bertles* v. *Nunan*, 92 id. 152 ; *Lynn* v. *Smith*, 20 Wkly. Dig. 459 ; *Johnson* v. *Rogers*, 20 id. 568 ; *Fairlee* v. *Bloomingdale*, 14 Abb. [N. C.] 341 ; *Noel* v. *Kinney*, 15 id. 403 ; *Jacquin* v. *Jacquin*, Id. 408 ; *Kauffman* v. *Schœffel*, 22 Wkly. Dig. 51.)

*Abram Kling* for respondent. In accordance with the provisions of the Revised Statutes, where parties enter into a limited copartnership and there is a violation of its provisions, the special partner becomes liable as a general partner. (2 R. S. [6th ed.] 1154, § 8 ; *Sharp* v. *Hutchinson*, 100 N. Y. 533 ; *Durant* v. *Abendroth*, 97 id. 122 ; *Bodine* v. *Killeen*, 56 id. 93 ; *Noel* v. *Kinney*, 106 id. 74.) The defendant Adele was liable as to creditors of the firm of " George Caffe " as a partner, though not liable as between her husband and self. (*Bitter* v. *Rothman*, 61 N. Y. 512 ; *Scott* v. *Conway*, 58 id. 619 ; *Noel* v. *Kinney*, 106 id. 74 ; *Hamilton* v. *Douglass*, 46 id. 218 ; *Zimmermann* v. *Erhard*, 8 Daly, 311 ; 83 N. Y. 74 ; *Armitage* v. *Mace*, 96 id. 538.)

FOLLETT, Ch. J.   But a single question is involved in this appeal, which is whether a married woman who contracts a debt with her husband in a business carried on for their joint benefit can avoid liability for it on the ground of coverture. The second section of chapter 90 of the Laws of 1860, provides that: "A married woman may   *   *   *   carry on any trade or business   *   *   *   on her sole and separate account." It is urged that this language is not broad enough to authorize married women to engage in business as partners or jointly with others, or at least with their husbands, but that the statute simply confers power on them to contract by themselves and apart from others.   This construction is too narrow and fails to express the evident intent of the legislature, which was not to prescribe the mode in which married women should carry on their business, but to free them from the restraints of the common law and permit them to engage in business in their own behalf as free from the control of their husbands as though unmarried.   Before this statute, the profits of their business belonged to their husbands and the words "sole and separate account" were intended to convey the idea that the beneficial interest of any business in which they might engage belonged to them and not to their husbands. Since the enactment of this statute it has been held that husbands and wives may legally contract with each other in reference to their separate estates (*Owen* v. *Cawley*, 36 N. Y. 600; *Bodine* v. *Killeen*, 53 id. 93); that they may become agents for each other (*Knapp* v. *Smith*, 27 N. Y. 277), and that a husband may assign to his wife a chose in action (*Seymour* v. *Fellows*, 77 N. Y. 178).

In *Frecking* v. *Rolland* (53 N. Y. 422), it was held that a wife could not escape liability on a joint promissory note given by herself and her husband in payment for property purchased by her by reason of her coverture, nor by reason of the fact that she contracted jointly with her husband.

In *Scott* v. *Conway* (58 N. Y. 619), the defendant and her husband were engaged in running a theatre under the name of "Mrs. F. B. Conway's Brooklyn Theatre," pursuant to a

contract by which the profits and losses were to be equally shared between them. To an action brought for the recovery of the value of goods sold the wife interposed the defense that she was not liable for the debt, because it was not contracted in any trade or business carried on for her sole or separate account or benefit, but for the benefit of a business carried on by herself and husband for their joint benefit. This defense was overruled in the Supreme Court and in the Court of Appeals.

*Bitter* v. *Rathman* (61 N. Y. 512) was an action for an accounting between partners. The plaintiff, a married woman, had been engaged in business with the defendant under the name of H. Rathman & Co. The trial court found "that the plaintiff, in secret trust for her husband, was the partner of the defendant," and that "in respect to the public she was to be regarded as the real partner," and ordered an accounting as to the partnership affairs. GRAY, Commissioner, said : "Yet she, having suffered herself to be regarded by the public as a partner, was liable as such to the creditors of the ostensible firm ; and having thus exposed herself to such liabilities, if any should be found to exist, she had to any such extent no right, as against either the defendant or her husband, to be protected out of the share which would belong to her in her capacity as trustee for her husband, at whose instance she undertook the trust." This case does not decide that a wife may or may not be a partner in business with her husband, but it, in effect, decides that a married woman may be a partner with a third person, and that her husband may act as her agent in the business of the firm.

In *Noel* v. *Kinney* (106 N. Y. 74 ; 15 Abb. [N. C.] 403), an action was brought against the husband and wife on a note signed "J. P. Kinney & Co.," payable to the plaintiff. The complaint charged that the defendants were liable as partners under the name signed to the note. The husband made default, but the wife answered that she was a married woman, and that the note was executed by her husband. On the trial the plaintiff put the note in evidence, and it appeared that the

defendants were husband and wife, and there was evidence that the note was given for mirrors placed in houses owned by the wife. A motion to dismiss the complaint on the ground that the note on its face showed that it was not given in respect to her separate business or her estate, was overruled. In considering this question DANFORTH, J., speaking for a unanimous court, said: "In the case cited (*Frecking* v. *Rolland*, 53 N. Y. 422), she became a joint contractor with her husband, but she was as much bound to perform the joint engagement as if the undertaking had been several, and she did not escape liability because her joint contractor was her husband. It was not necessary to inquire in that case whether the one paying could obtain contribution from the other, nor is it necessary to go into that question here. In that case both undertook to pay the creditor. Can it make a difference in the measure of liability that in one case the married woman entered in her own name and her husband in his name in the execution of a joint obligation, and in the other case adopted a name which represents a joint liability, which may, in effect, also be several? Partners are at once principals and agents — each represents the other — and if in the relation of partnership there are obligations which a married woman cannot enforce against her husband, or the husband against the wife, they involve no feature of the present action, which asserts only the obligation of a debtor to discharge her debt, or the obligation of a promissor to fulfill her promise."

Partners are the agents of each other and are jointly and severally liable for the debts of the firm, these being two of the essential elements of a contract partnership. It being settled that husbands and wives may be the agents of each other, and that they may bind themselves by joint contracts entered into with third persons, we see no warrant in the statute for exempting them from liability to creditors for debts incurred by firms of which they are members. It has been so held in *Graff* v. *Kinney* (37 Hun, 405; 15 Abb. [N. C.] 397); *Zimmermann* v. *Erhard* (8 Daly, 311; 83 N. Y. 74). Opposed to these are *Chambovet* v. *Cagney* (3 J. & S. 474);

*Kaufman* v. *Schoeffel* (37 Hun, 140); *Fairlee* v. *Bloomingdale* (67 How. 292; 14 Abb. [N. C.] 341; 38 Hun, 230).

Upon principle and authority, we think that when a husband and wife assume to carry on a business as partners, and contract debts in the course of it, the wife cannot escape liability on the ground of coverture.

The judgment should be affirmed, with costs.

HAIGHT, J. (dissenting). The complaint alleges that the defendants were copartners in trade, doing business under the firm name and style of George Caffe, and that, the plaintiff loaned and advanced to them as copartners the money sought to be recovered in this action. The defendants were husband and wife. They answered separately, each denying the copartnership, and that any money was loaned to them as copartners, and the defendant Adele Marie alleged her marriage to the defendant George, and that she was, during the time mentioned in the complaint, his lawful wife. The question as to the existence of the copartnership was controverted upon the trial. The verdict was in favor of the plaintiff, thus disposing of that question. The entire business was transacted by the defendant George Caffe, and the loans were made by him, the defendant Adele Marie taking no part. The plaintiff is the brother of the defendant Adele Marie, and knew of the relation existing between the defendants. He was at work, as he claims, for the firm upon a salary at the time the loans were made. There is no evidence constituting an estoppel on the part of the wife, and the sole question left for our determination is whether a wife can lawfully engage in a business copartnership with her husband and be bound by the contracts made by him as a copartner.

This question was considered in the case of *Kaufman* v. *Schoeffel* (37 Hun, 140), in which it was held by the General Term of the fifth department that the statute enabling a married woman to enter into contracts, and to carry on any trade or business, and perform any labor or services on her sole and separate account, did not authorize or empower her

to enter into a copartnership with her husband for the purpose of carrying on a trade or business.

The question was also considered at about the same time in the case of *Graff* v. *Kinney* (37 Hun, 405), in which the General Term of the second department reached the opposite conclusion, affirming 15 Abb. (N. C.) 397.

In the case under consideration DAVIS, P. J., of the first department, in disposing of the case, says : " In my individual opinion the decision in *Kaufman* v. *Schoeffel* (*supra*) is a correct determination of the law, as I think the contrary ruling is adverse to the spirit and intention of the Married Woman's Acts which were to separate the estate of a married woman from that of her husband, and to completely establish its separate character during coverture and not enable her to so commingle it in copartnership as to clothe him with the power and title which copartners possess in law." (25 Wkly. Dig. 296.)

The question was previously considered in the case of *Chambovet* v. *Cagney* (3 J. & S. 474), in which SEDGWICK, J., says that " the law has made such rules in respect of the relations of man and wife, that it would be inconsistent with those that they should become partners in business. There is no doubt that the various acts for the protection of a married woman's property have left her in many respects as the common law placed her, under the control and in the power of her husband. * * * Such a dominion and control cannot be exercised by one partner in business over another without a change of those legal relations which have formed the important characteristic of a partnership. In case a wife has a separate property, although domestic circumstances may keep her home, or she may be kept there by the lawful exercise of the husband's power over her in a proper contingency, he will not have power to dispose of that property. If they are business partners he might legally keep her home and legally dispose of the partnership property at the place of business. I do not believe that the legislature contemplated such an incongruity of rights and duties which accompany the formation of business partnerships between husband and wife."

In the case of *Zimmermann* v. *Erhard* (58 How. Pr. 11), BEACH, J., in the New York Common Pleas, reached the conclusion that the wife may contract with her husband a valid business copartnership. His opinion, however, does not appear to have been concurred in by the remaining members of the court. VAN BRUNT, J., says, in disposing of the case, that he does not think it necessary to pass upon the question whether or not, if a married woman enters into a copartnership with her husband, she can avail herself of the defense of coverture for the reason that such defense is personal to her, and she may avail herself of it or not, as she sees fit. LARREMORE, J., concurred in the result, but evidently not upon this question, for in the case of *Jacquin* v. *Jacquin* he reached the conclusion that the common-law relation of husband and wife had not been changed so as to permit a business copartnership between them. (*Noel* v. *Kinney*, 15 Abb. [N. C.] 408, note.)

The question was again examined in the case of *Fairlee* v. *Bloomingdale* (67 How. Pr. 292), in which WESTBROOK, J., at Special Term, considers the question in an elaborate opinion, reaching the conclusion that business partnerships between husband and wife are not authorized by the statute, and that the conclusion of BEACH, J., in the case of *Zimmermann* v. *Erhard* (*supra*), cannot be sustained and should not be followed. And to the same effect is the decision of the General Term of the City Court of Brooklyn, in the case of *Noel* v. *Kinney* (15 Abb. [N. C.] 403).

In the case of *Bitter* v. *Rathman* (61 N. Y. 512), the plaintiff was a married woman and had been engaged in business as a copartner with the defendant under the firm name of Rathman & Co. It was found that she was engaged as such copartner in secret trust for her husband, although she had furnished from her separate property the funds with which the copartnership business was carried on. A disagreement having arisen as between the copartners, she brought an action for a dissolution and an accounting. The defendant claimed that under the statute authorizing a married woman to carry

on any trade or business and perform any labor and services for her sole and separate account, she was not empowered to ·enter into a partnership business in which she had no interest other than as trustee for another. The court, in answer to that claim, says: "All this may be conceded so far as it regards her husband and his creditors. As to the creditors of her husband, he, and not she, would doubtless be regarded the real partner. Yet, having suffered herself to be regarded by the public as a partner, she was liable as such to the creditors of ·the ostensible firm, and having thus exposed herself to such liabilities, if any should be found to exist, she had to such ·extent the right, as against either the defendant or her husband, to be protected."

In the case of *Noel* v. *Kinney* (106 N. Y. 74), it was held that the defense of coverture did not protect the wife for a ·debt contracted for the improving of her real and separate ·estate and for which she was bound to the same extent as if a *femme sole;* that she was estopped by her acts and declarations in the matter. DANFORTH, J., in delivering the opinion ·of the court, says: "There was evidence from which the jury might have found that she was the owner of improved real estate in the city of Brooklyn; that the consideration of the note was the purchase-price of mirrors placed in houses built upon her land, and that the mirrors were unpaid for. The note was fairly taken and the consideration delivered upon the representation by the husband that the wife was the sole owner of the property, and that the name of J. P. Kinney & ·Co. was used as mere matter of convenience in transacting her business. It does not appear that there was any business except in relation to the houses. No question was made as to the authority of the defendant's husband to execute the note, nor as to the truth of his representations." In this case the ·question under consideration was held not to be involved, and the court expressly states that it is not decided.

But in the case of *Hendricks* v. *Isaacs* (117 N. Y. 411), it does appear to us that the question was decided. ANDREWS, J., in delivering the opinion of the court, says: "The point

on this appeal respects the right of the plaintiff to have the contract made with his wife enforced against her estate. The contract was void at law. The common-law doctrine that husband and wife could not contract with each other, has not been changed in this state by legislation respecting the rights of married women. The entire and absolute disability of married women to enter into any legal contract which was a stubborn and inflexible principle of the common law, has, indeed, in some respects, been modified. She may now, under our laws, purchase real and personal property and carry on business on her own account, and, as incident to these rights, she may enter into contracts with third persons for the purchase and sale of property, or in the prosecution of her separate business, enforceable in a legal action to the same extent as though she was a *femme sole.* But the disability to deal with her husband, or to make a binding contract with him, remains unchanged. Contracts between husband and wife are invalid as contracts in the eye of a court of law to the same extent now as before the recent legislation. ( *Yale* v. *Dederer,* 18 N. Y. 265 ; *White* v. *Wager,* 25 id. 328.) "

In other states where the statute is similar to our own, it has been held that a husband and wife cannot enter into a business copartnership. (*Lord* v. *Parker,* 3 Allen, 127 ; *Lord* v. *Davison,* Id. 131 ; *Edwards* v. *Stevens,* Id. 315 ; *Plumer* v. *Lord,* 5 id. 460–463 ; 7 id. 481 ; *Bowker* v. *Bradford,* 140 Mass. 521 ; *Payne* v. *Thompson,* 44 Ohio St. 192 ; *Haas* v. *Shaw,* 91 Ind. 384–390 ; *Scarlett* v. *Snodgrass,* 92 id. 262 ; *Bassett* v. *Shepardson,* 52 Mich. 3 ; *Artman* v. *Ferguson,* 40 N. W. Rep. 907.) So much for the authorities bearing upon the question.

The statute provides that a married woman may bargain, sell, assign and tranfer her separate personal property, can carry on any trade or business, and perform any labor or services on her sole and separate account, and the earnings of any married woman from her trade, business, labor or services shall be her sole and separate property, and may be used or invested by her in her own name. (Laws of 1860, chap. 90, § 2.)

The question is as to the construction of this statute for at common law a husband and wife could not contract together a business copartnership. The disabilities of a married woman to contract are general, and her capabilities are created by statute. They are few in number and limited. Her general engagements are void unless authorized. (*Nash* v. *Mitchell,* 71 N. Y. 199–204; *Bertles* v. *Nunan,* 92 id. 152–160.)

Prior to the act of 1884, to which we shall subsequently allude,. she could not bind herself by contract unless the obligation was created by her, in or about carrying on her trade or business, or the contract relates to, or is made for the benefit of her separate estate, or intention to charge the separate estate is expressed in the instrument or contract by which the liability is created; or the debt was created for property purchased by her. (*S. C. Bank* v. *Pruyn,* 90 N. Y. 250–254.)

The statute alluded to does not absolve her from the duty to render to her husband such services in his household as are commonly expected of a married woman in her station in life. It was the purpose of the statute to secure to the married woman, free from the control of her husband, the earnings and profits of her own business and her own labor and services. carried on, and performed on her own and separate account. which at common law would have belonged to her husband. (*Coleman* v. *Burr,* 93 N. Y. 17–24; *Johnson* v. *Rogers,* 35 Hun, 270.)

The words "on her sole and separate account" appearing in the statute must be held to limit and qualify the words "trade or business," as well as the words "labor or services." The words "trade or business" are connected with the words "labor and services" by the conjunction "and," and the phrase "on her sole and separate account" evidently was intended to refer back and qualify the words "trade or business." So that the meaning is the same as if it read, that a married woman may carry on any trade and business on her sole and separate account, and perform any labor or services. on her sole and separate account. The section preceding the one under consideration provides that the property, which a

married woman acquires "by her trade, business, labor or services carried on, or performed on her sole and separate account," etc., shall be and remain her sole and separate property. The phrase "on her sole and separate account" in this section unquestionably refers back, and limits or qualifies the words "trade, business, labor or services," and this is evidenced from the phrase "carry on or perform." The words "carry on" refer to her trade or business, and the word "perform," to her labor or services. To the same effect is the concluding portion of the sentence, which follows that under consideration.

Whether or not a married woman may engage in a copartnership business with a person other than her husband, it is not necessary to now consider. If disqualified, it is by reason of the existence of her husband. By her marriage her person became united with that of her husband, so that in law they were regarded as one person. If the husband should die or the marriage be dissolved her disabilities would be removed. In using the words "sole and separate" the legislature doubtless had in mind the husband and these words were evidently intended to refer to him.

We consequently are of the opinion that the common-law disability of a married woman to engage in a business copartnership with her husband still continues, and has not been removed by the statute. This view appears to be sustained by the more recent legislation on the subject. By chapter 381 of the Laws of 1884, it is provided "A married woman may contract to the same extent, with like effect and in the same form as if unmarried, and she and her separate estate shall be liable thereon whether such contract relates to her separate business or estate or otherwise, and in no case shall a charge upon her separate estate be necessary. This act shall not affect or apply to any contract that shall be made between husband and wife," thus specially excepting from the provisions of the act any right of the wife to contract with her husband. It consequently appears to us that the motion made at the close of the plaintiff's case to dismiss the

complaint as to the defendant Adele Marie Caffe should have been granted, and that the exception to such refusal is well taken.

The judgment as to the defendant Adele Marie Caffe should be reversed and a new trial granted with costs to abide the event, but the judgment as to the defendant George Caffe should be affirmed with costs.

VANN, PARKER and BROWN, JJ., concur with FOLLETT, Ch. J. POTTER and BRADLEY, JJ., concur with HAIGHT, J. dissenting.

Judgment affirmed.